MaddeN, Judge,
delivered the opinion of the court:
The plaintiff, in his income tax returns for each of the years 1943, 1944, and 1945, claimed a deduction of $9,600, the amount paid by him in each year to his wife from whom he was separated. A written agreement between him and his wife provided for the payment of that amount. The tax authorities denied the deduction, the plaintiff paid the tax and now sues for its refund.
The plaintiff bases his claim upon the provisions of Sections 22 (k) and 23 (u) of the Internal Bevenue Code. The former section provides that “In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or separate maintenance, periodic payments * * * received * * * in discharge of, a legal obligation which, because of the marital or family relationship, *538 is imposed upon such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, * * Section 23 (u) permits the husband to deduct from his income the amounts required by Section 22 (k) to be included by the wife in her income.
Our question is whether the plaintiff’s payments to his wife were of the kind described in Section 22 (k).
The plaintiff and his wife had been living apart for some time prior to April 1926. On April 13, the wife filed an action for separation in the Supreme Court of the State of New York, demanding a judgment for a separation from bed and board and for a suitable provision for her and their two children. She demanded also alimony pendente lite, counsel fees, and the arrest of her husband. The plaintiff answered. Various motions were made and acted on by the Court. On November 3, 1926, the case was called for trial. The presiding judge directed the parties and their attorneys to appear before Judge Cotillo. He took them into his chambers. He was a friend of the plaintiff and his wife, and discussed their problems with them and their attorneys for some hours on that day. He required the parties to submit proof of the husband’s financial status. On subsequent days he discussed with the parties what kind of a separation agreement would be satisfactory to them. Various drafts were prepared by the parties and commented on by the judge. The final draft was approved by him and was signed by the parties on December 7, 1926. That agreement recited that the parties had had marital troubles, that the wife had brought an action for separation, that the parties agreed that it should be lawful for the parties to live separate and apart and for the wife to be free from the husband’s marital control and authority. It then made detailed provision for the payments to be made by the husband, including the payments involved in the suit now before us.
On the following day, December 8, the Court entered an order discontinuing the case, on the basis of a stipulation of the parties which was annexed to the order. Neither the order nor the stipulation mentioned the separation agreement which the parties had made.
*539 Sections 22 (k) and 23 (u) of the Internal Revenue Code were inserted by the Revenue Act of 1942. The question whether the plaintiff could get the benefits of these provisions then arose. As we have said, he sought to take the deductions for the years 1943,1944, and 1945 but was not allowed to do so. In 1949, the plaintiff filed an affidavit in the court where his wife’s separation action had been brought, stating that he was prejudiced in his controversy with the taxing authorities by the failure of the Court’s order, made in 1926, to state that the settlement of the case at that time was based primarily upon the separation agreement made at that time. The Court was convinced by the affidavit of the plaintiff, and the affidavits of other persons familiar with the facts, that that was the case, and revised the order which it had made in 1926. As revised, the order, which is quoted in our Finding 11, stated that Judge Cotillo had brought about a settlement of the parties’ dispute, “culminating in a separation agreement,” and that it was ordered “based upon the separation agreement” and the stipulation of the attorneys made in 1926, that the cause be discontinued.
Section 22 (k), as we have seen, applies to cases where a wife is “divorced or legally separated from her husband under a decree of divorce or separate maintenance.” The plaintiff’s wife was not in that status. She had sued for such a decree, but had discontinued her suit and taken, instead, a private agreement satisfactory to her. The fact that she may have been persuaded to do so by a judge who, acting as a judge and as a personal friend of herself and her husband, thought that that was the best solution of the marital difficulties, seems to us to be immaterial. Of course, as the resettled order stated, the discontinuance of the case was based upon the separation agreement, and would hardly have been consented to by the wife but for the agreement. But that did not mean that the Court decreed a legal separation. It meant that the Court, by successful mediation, avoided the necessity of decreeing a legal separation. Unless we are to say that efforts, such as that of Judge Cotillo, to get parties to marital disputes to settle their difficulties without going to the extreme of a judicial decree, are wholly futile, because their private agreement to live apart is the equivalent of a *540 judicial decree to that effect, we cannot say that Section 22 (k) is bere satisfied even by tbe substitution of something equivalent to what it, in terms, requires.
The plaintiff’s petition will be dismissed.
It is so ordered.
Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court having considered the evidence, the report of Commissioner Eichard H. Akers, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff is a resident of the City, County, and State of New York, and is a citizen of the United States.
2. The plaintiff duly filed his income tax returns for the calendar years 1943, 1944, and 1945 and paid the amount of taxes shown due thereon. In each of those returns the plaintiff claimed a deduction of $9,600 which was paid by him to Mary Portfolio, his wife from whom he was separated, as alimony payments under a written agreement executed December 7,1926, and hereinafter more fully described.
3. On or about March 14, 1949, the plaintiff paid the following amounts of deficiencies and interest assessed by the Commissioner of Internal Eevenue:
1943 1944 1945
Tax. $9,049.28 $7,471.63 $7,679.00
Interest. 2,690.36 1,773.03 1, 301.49
The foregoing deficiencies were determined on the basis of a revenue agent’s reports dated October 16, 1946, for the year 1943, and September 18, 1947, for the years 1944 and 1945, in which, among other adjustments, the revenue agent recommended the disallowance of the deduction of $9,600 claimed by the plaintiff as alimony upon his returns and referred to in the preceding finding. After protest by the plaintiff against the recommendation of the revenue agent, the Commissioner issued a 90-day letter of June 16, 1948, showing deficiencies in the amount recommended by the revenue agent for each of the years 1943,1944, and 1945, and these deficiencies were assessed and paid, as shown above, without *541 the plaintiff having availed himself of the privilege of filing a petition in the Tax Court of the United States. In his final determination of those deficiencies, the Commissioner, in addition to other adjustments, disallowed the deduction of $9,600 claimed in each of those years (including $9,600 for the year 1942 by reason of the operation of the tax forgiveness features of the Current Tax Payment Act of 1943).
4. On February 9, 1950, the plaintiff filed a claim for refund for each of the years 1943,1944, and 1945, on the ground that the alimony deductions of $9,600 claimed for each of those years should be allowed under the provisions of Sections 22 (k) and 23 (u) of the Internal Revenue Code. No official action has been taken by the Commissioner on the claim for refund for 1943 but the claims for refund for 1944 and 1945 were disallowed on May 29,1951.
5. The alimony deductions claimed by the plaintiff in his income tax returns and claims for refund for each of the years 1943, 1944, and 1945 were based upon an agreement between the plaintiff and his wife, Mary J. Portfolio, which was executed December 7, 1926, under circumstances which are described in the findings which follow.
6. As a result of marital difficulties which had arisen between them, the plaintiff and his wife, Mary J. Portfolio, had been living apart for sometime prior to April 1926. On April 13,1926, the plaintiff’s wife filed an action for separation in the Supreme Court of the State of New York, for New York County, entitled Mary J. Portfolio, plaintiff, against Almerindo Portfolio, defendant. In that action the wife demanded a judgment for a separation from the bed and board of her husband, plaintiff herein, and that suitable provision be made for the support and maintenance of herself and their two children Giovina Y. Portfolio and Mary Elizabeth Portfolio. At the same time that the summons and complaint on account of the action for separation were served on the plaintiff herein, the plaintiff’s wife also filed an application for an order requiring the plaintiff to pay to her during the pendency of that action $3,500 per month and attorney’s fees. In addition, the wife caused the court to have issued an order for the arrest of the plaintiff and to hold him in bail for the sum of $10,000.
*542 7. On April 19, 1926, the husband joined issue as to the matters set forth in the complaint, opposed the motion for alimony during the pendency of that action and counsel fees, and made an affidavit in opposition to the application for order of arrest. At or about the same time the wife obtained an order on the husband to show cause why the husband’s bail should not be increased and for the rearrest of the husband. The court, by an order dated April 19, 1926, denied the application for the increase of bail and the rearrest of the husband. On May 7,1926, the court ruled on the motion for alimony pendente lite and attorney’s fees, allowing attorney’s fees in the amount of $2,500 but stating that since the husband had been providing liberally for the support of his wife and children and that there was nothing to indicate that such payments would be discontinued, the motion for alimony would be denied. On June 4,1926, the court entered an order in accordance with its ruling of May 7, 1926. On July 6, 1926, the husband appealed from the foregoing decision of the court but by stipulation dated July 27,1926, the appeal was withdrawn.
8. The aforementioned action for separation was called for trial at the special term of the Supreme Court of the State of New York at 2 p. m. on November 8, 1926, before the Honorable Judge Glennon, one of the justices of that court. The husband’s attorney answered the call of the case. Until that time the case had been actively contested by the husband. When the case was called, Judge Glennon directed the attorneys for the parties to appear with the parties to the action before Judge Cotillo. Judge Cotillo was another of the justices of that court and a mutual friend of the parties to that action. Judge Cotillo directed the attorneys to reappear in his chambers that afternoon at 3: 30 p. m. and he examined into the case until 5: 30 p. m. of that day. Thereafter the parties were required to submit proof to Judge Cotillo as to the husband’s financial responsibility. Judge Cotillo talked to the attorneys, to the litigants, and to the attorneys with the litigants, in an effort to determine what kind of a separation agreement would be satisfactory and various drafts were prepared by the parties. Judge Cotillo actively participated in the preparation of these drafts, in- *543 eluding Ms approval of the draft which became the separation agreement involved in this proceeding and referred to in finding 9.
9. As a result of the foregoing consideration and discussions, an agreement was reached by the parties which was embodied in a written separation agreement which was executed by the parties December 7, 1926. That agreement, after reciting that there were disputes between the parties, that the wife had commenced an action for separation against the husband and referring to the various steps taken in that proceeding, then recited that in consideration of the premises it should be lawful for the wife to live separate and apart from the husband and free from his marital control and authority, and lawful for the husband to live separate and apart from the wife. Provisions of that agreement, material to this proceeding, are as follows:
Third : From and after the 1st day of December, 1926, and during the term of the lease of the apartment now occupied by the Wife at No. 525 Park Avenue, in the Borough of Manhattan, City of New York, that is to say, up to and including the 30th day of September 1927, the Husband shall pay to the Wife for her support and maintenance, use and benefit, and for the support and maintenance, use and benefit of the children, the sum of Two thousand five hundred ($2,500.) Dollars on the 5th day of December 1926, and a like sum on the 5th day of March 1927, and on the 5th day of June 1927, respectively, and the sum of Eight hundred thirty-three and 33/100 ($833.33) Dollars on the 5th day of September 1927; in addition to the aforesaid payments, the Husband shall, during the said period, duly and promptly, pay directly to the landlord the rent and electric light charge of the said apartment at No. 525 Park Avenue. From and after the 1st day of October 1927, the Husband shall pay to the Wife for her support and maintenance, use and benefit, and for the support and maintenance, use and benefit of the children, the sum of Three thousand ($3,000) Dollars on the 5th day of October 1927, and a like sum quarter-annually thereafter on the 5th day of each and every January, April, July, and October: out of the aforesaid payments of Three thousand ($3,000) Dollars quarter-annually, the Wife shall pay the rent of such apartment or abode as she may decide to live in from and after the 1st day of October 1927, and shall pay all other expenses for the support, main *544 tenance, use, and benefit of herself and of the children, saying and excepting only the tuition of the children hereinafter separately provided for, and saving and excepting also the expenses of the Wife, up to but not exceeding the sum of Five hundred ($500) Dollars, to be incurred in moving from No. 525 Park Avenue.
In addition to the aforesaid payments, the Husband agrees to pay directly the tuition of the children at the school where they are now being educated, to wit, the Spence School, or at such other private school or schools in place of the Spence School and/or at such college or colleges, as the parties may hereafter, from time to time, agree to send the children or either of them to, and he also agrees to pay the moving expenses as aforesaid.
Fourth : The Wife now has and shall continue to have the custody and control of the children until they respectively attain the age of twenty-one (21) years, or marry, whichever event shall happen first, subject, however, to the right of each of the children from and after the time that she attains the age of eighteen (18) years, to exercise a preference that the Husband shall have custody and control. The Husband shall, however, have the right, even though the children or either of them are then otherwise in the custody and control of the Wife, to take Giovina with him, and also Mary Elizabeth after she has attained the age of fourteen (14) years, during each school or college vacation for a period not exceeding five weeks, to any place within the State of New York.
In the event that either child elects to prefer the custody and control of the Husband, or upon the marriage, attainment of majority, or death of either child, the amounts hereinbefore stipulated to be paid by the Husband to the Wife shall be diminished by the sum of Three hundred ($800) Dollars per quarter for each child so electing, marrying, attaining majority or dying.
# He H* *
Sixth : The Wife does and shall accept the provisions herein made for her in full satisfaction for her support and maintenance, and for the support and maintenance, during the time herein provided for, of the children, and she hereby covenants and agrees that so long as the Husband shall duly keep and perform the covenants, agreements and conditions by him to be kept and performed hereunder, she will not, at any time hereafter, contract or incur any debt, charge or liability whatsoever for which the Husband or his property or estate shall or may be or become liable or answerable, and the Wife *545 hereby covenants and agrees that she will at all times hereafter, so long as the Husband and his estate shall make the payments herein provided for, keep the Husband and his estate free and harmless from any and all debts or liabilities which may hereafter be incurred by the Wife. And the Wife further covenants and agrees that she has not heretofore contracted or incurred any debt or liability for which the Husband is or may be answerable, except debts or liabilities for which bills have been heretofore sent to and received by the Husband.
* * * * *
Ninth: Subject to the limitations hereinafter in this paragraph contained, this agreement and all the terms and conditions thereof shall continue in full force and effect and shall be binding and obligatory upon the parties hereto and upon the estate of the Husband after his death, so long as the Wife shall live, and whether the Wife shall or shall not at any time in the future obtain a valid judgment or decree of divorce against the Husband in a court of competent jurisdiction, and the rendition of such a judgment or decree of divorce in favor of the Wife and against the Husband shall not invalidate this agreement, or the terms and conditions thereof, but the Husband and the Wife shall be required to perform each and all of the terms hereof, in the event that any such judgment or decree is at any time in the future rendered in favor of the Wife and against the Husband, and this agreement shall be embodied in and be made a part of such judgment or decree. This agreement and all the terms, provisions and conditions thereof and any and all liability or responsibility of the Husband to the Wife hereunder or otherwise, shall, however, cease and come to an end in the event that the Wife shall again marry, or in the event that the Husband shall in the future obtain a valid decree of divorce against the Wife upon the ground of adultery in a court of competent jurisdiction, having full jurisdiction over the parties and the subject matter. Nothing in this agreement contained shall lie a bar to the institution of any action for divorce by either party against the other on the ground of adultery hereafter occurring.
* * iji ifc *
Eleventh: The action now pending in the Supreme Court of the State of New York, New York County, shall be discontinued without costs to either party as against the other, the order of arrest obtained by the Wife *546 against the Husband in said action shall be vacated and set aside and both the undertaking furnished bj the Wife and the undertaking furnished by the Husband in connection with the said order of arrest shall be cancelled and the respective sureties released from all liability thereunder.
10. On December 8,1926, the Supreme Court of the State of New York entered an order discontinuing the aforementioned case, such order reading as follows:
Upon the annexed stipulation, dated December 6,1926, it is
Ordered, that the above entitled action be and the same hereby is discontinued, without costs to either party as against the other, and it is further
Ordered, that the order of arrest, dated the 13th day of April 1926, obtained by the plaintiff against the defendant, and made by the Hon. Jeremiah T. Mahoney, one of the Justices of this Court, wherein and whereby the Sheriff of the County of New York was required to arrest the defendant and to hold him to bail in the sum of $10,000, be and the same hereby is vacated and set aside, and it is further
Ordered, that the undertaking furnished by the plaintiff upon obtaining the said order of arrest, in the sum of $500, dated April 13, 1926, with National Surety Company as surety; be and the same hereby is can-celled, and the said surety be and hereby is released from all liability thereunder, and it is further
Ordered, that the undertaking dated the 14th day of April 1926, in the sum of $10,000, with Standard Accident' Insurance Company as surety, which undertaking was furnished by the defendant to secure his release from the custody of the Sheriff under the said order of arrest, be and the same hereby is cancelled, and the said surety be and hereby is released from all liability thereunder.
The order was signed by Judge J. S. Crane, a justice of the Supreme Court of the State of New York. Neither the attorneys nor the parties had any discussion with Judge Crane in respect to the separation agreement of December 7,1926.
The annexed stipulation referred to in the foregoing order of discontinuance read as follows:
It Is Hereby Stipulated by and between the parties hereto, through their respective attorneys, as follows:
*547 1. That the above entitled action be and hereby is discontinued without costs to either party as against the other.
2. That an order of arrest, dated the 13th day of April 1926, obtained by the plaintiff against the defendant, and made by the Hon. Jeremiah T. Mahoney, one of the Justices of this Court, wherein and whereby the Sheriff of the County of New York was required to arrest the defendant and to hold him to bail in the sum of $10,000, shall be vacated and set aside.
3. That an undertaking furnished by the plaintiff upon obtaining the said order of arrest, in the sum of $500, dated April 13,1926, with National Surety Company as surety, be cancelled, and the surety released from all liability thereunder.
4. That an undertaking dated the 14th day of April 1926, in the sum of $10,000, with Standard Accident Insurance Company as surety, which undertaking was furnished by the defendant to secure his release from the custody of the Sheriff under the said order of arrest, be cancelled, and the surety released from all liability thereunder.
An order or orders to the foregoing effect may be entered by either party without further notice.
11. In an affidavit executed September 20,1949, and filed in the Supreme Court of the State of New York in the action between the plaintiff herein and his wife, after stating that he was the defendant in that action which was discontinued by order of the court dated December 8, 1926, and after referring to the various steps taken in that action, plaintiff stated in part as follows:
It is respectfully submitted that the above order referred to is defective by reason of the fact that a valuable and substantial right of this defendant, your deponent, is destroyed. The destruction of this right is brought about by the fact that the said stipulation and the order discontinuing the action failed to mention the separation agreement as being the basis for the stipulation and order.
Your deponent has complied with and performed all of the terms and conditions of the said separation agreement, and is not in default in any manner. The change of the Income Tax Regulations in 1942, with respect to alimony payments incident to a divorce or separation, declared such payments to be a deductible item. The defendant, your deponent, availed himself of this de *548 duction since that time, and the Commissioner of Internal Revenue has now denied to your deponent this deduction and is now assessing, and has assessed, with interest and penalties, all of these deductions taken. It is therefore apparent that it is essentially necessary, in order to protect deponent’s rights, that the order above referred to be resettled, incorporating in it a copy of the separation agreement and/or mentioning the separation agreement by reference, and that the settlement of the case at that time was based primarily upon this separation agreement.
* # * * ❖
WheeefoRe, your deponent respectfully prays, that based upon the affidavits herein alleged and the separation agreement, an order in the form annexed hereto be entered herein, resettling the order of this Court dated December 8,1926, and for such other and further relief as to the Court may seem just and proper.
Supporting affidavits were filed by Francis T. Nemac, attorney for the husband in that proceeding, Louis F. Goss-wein, a certified public accountant, and Arthur Garfield Hays who had been the attorney for the wife in that action. A consent to the application was filed by Giovina Tribuno and Mary Elizabeth Werner, the children and also the general and residuary legatees under the last will and testament of their mother, Mary J. Portfolio, who died on April 30,1948.
An order was thereupon entered on October 26, 1949, by a Justice of the Supreme Court of the State of New York under which the order of December 8, 1926, set out in finding 10, was resettled. The first two p aragraphs of that order read as follows:
The plaintiff having commenced an action for a separation based upon the ground of abandonment on the 13th day of April, 1926, and the defendant having by his attorneys answered thereto and both parties having appeared in Court prepared and ready for trial, which trial was postponed through the intervention of Hon. Salvator A. Cotillo, one of the Justices of this Court, who brought about a settlement of the differences and disputes existing between the parties to the action, culminating in a separation agreement dated the 13th [sic] day of December, 1926, it is
*549 Okdeked, that based upon the separation agreement hereinabove mentioned, dated December 1, [sic] 1926, and the stipulation entered into by and between the respective attorneys for the foregoing parties on the 6th day of December, 1926, the above entitled action be and the same hereby is discontinued without costs to either party as against the other, and it is further
* * * $ ' $
The remainder of the order was identical with the last three paragraphs of the order of December 8,1926.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover and his petition is therefore dismissed.